In re PROVIDENT GENERAL CORPO-
RATION d/b/a Alexandria Memorial
Gardens, Debtor.

William C. SANDOZ, Trustee in
Bankruptcy, Plaintiff,

v.

AMI, INC., Defendant.

Bankruptcy No. 479–00002.
Adv. No. 481–0092.

United States Bankruptcy Court,
W.D. Louisiana.

Sept. 9, 1983.

See also Bkrtcy., 32 B.R. 594.

Gerald H. Schiff, Opelousas, La., for William C. Sandoz, Trustee.

Dan E. Melichar, Alexandria, La., for AMI, Inc.

Ben R. Miller, Sr., Asst. Atty. Gen., Baton Rouge, La., for the Louisiana Atty. Gen. Office, amicus curiae.

## OPINION

RODNEY BERNARD, Jr., Bankruptcy Judge.

Provident General Corporation instituted bankruptcy proceedings herein under Chapter 11 of the Bankruptcy Code on October 2, 1979. The court on its own motion entered an order on May 28, 1980, converting the case to one under Chapter 7.

AMI, Inc., a Louisiana business corporation, filed a proof of claim as a secured creditor of the debtor corporation based upon a note secured by a mortgage on the debtor's cemetery property. The note is dated September 29, 1972, in the original principal sum of $163,000.00. The principal balance owed on the mortgage note as evidenced by the proof of claim is $137,767.08.

William C. Sandoz, the trustee in bankruptcy, instituted this adversary proceeding by filing a complaint to avoid the mortgage.

A summary of the pertinent chronological events is provided as follows:

1. On April 24, 1956, Alexandria Memorial Gardens, Inc. was incorporated for the purpose of establishing a cemetery. The corporation was authorized to issue 200 shares of stock.

2. On April 24, 1956, Alexandria Memorial Gardens, Inc. purchased a 43-acre tract of land located in Rapides Parish, Louisiana, from Thomas M. Roby.

3. On February 29, 1972, Chapel Park Corporation was incorporated.

4. (a) AMI, Inc. became the owner of the 200 shares of stock issued by Alexandria Memorial Gardens, Inc., and on July 28, 1972, AMI, Inc. sold all 200 shares to Roland E. Smith. Smith paid $15,385.00 cash and gave a 20-year note in the sum of $223,000.00 secured by a pledge of the stock purchased.

(b) On July 28, 1972, an installment note was executed by Roland E. Smith payable to AMI, Inc. in the sum of $223,000.00 payable in 240 monthly installments of $1,729.25 each, commencing September of 1972. The note was endorsed by Frank A. Jones, individually, and as President of Chapel Park Corporation and Alexandria Memorial Gardens, Inc.

(c) On July 28, 1972, an Act of Collateral Pledge was executed by Smith to pledge to AMI, Inc. the 200 shares of Alexandria Memorial Gardens, Inc. for an indebtedness owed to AMI, Inc. up to a limit of $300,000.00.

5. On August 23, 1972, a Joint Agreement and Plan of Merger was entered into between Alexandria Memorial Gardens, Inc. and Chapel Park Corporation. Alexandria Memorial Gardens, Inc. was merged into Chapel Park Corporation. Chapel Park Corporation would receive all properties of Alexandria Memorial Gardens, Inc. and assume all liabilities.

6. On September 29, 1972, Alexandria Memorial Gardens, Inc. executed a promissory note in the sum of $163,000.00 secured by a mortgage affecting the 41-acre tract of cemetery property.

7. On November 9, 1972, the merger agreement between Chapel Park Corporation and Alexandria Memorial Gardens, Inc. was filed with the Louisiana Secretary of State's office and that office certified that Alexandria Memorial Gardens, Inc. was no longer qualified to transact business in the state of Louisiana.

8. On June 11, 1976, an agreement was made between AMI, Inc. and Frank H. Jones, individually, and as President of Chapel Park Corporation, which agreement provided that Chapel Park Corporation and Frank H. Jones would assume the indebtedness of Roland E. Smith and Alexandria Memorial Gardens, Inc. owed to AMI, Inc., which consisted of the $223,000.00 note of July 28, 1972, and the $163,000.00 note of September 29, 1972. Roland E. Smith was released of all personal liability of those notes under this agreement.

9. On June 11, 1976, a Collateral Mortgage and Note in the sum of $225,000.00 payable to AMI, Inc. was executed by Alexandria Memorial Gardens, Inc. secured by the 41-acre tract of cemetery property.

10. On January 19, 1977, an Act of Pledge was executed by Chapel Park Corporation to Alexandria Memorial Gardens, Inc., which pledged the June 11, 1976 note of $225,000.00 to secure the $163,000.00 note of September 1972, and the $223,000.00 note of July, 1972.

11. On July 15, 1978, Alexandria Memorial Gardens, Inc. (a separate and distinct legal entity from the previous corporation by the same name, hereinafter referred to as AMGII) was incorporated.

12. On August 7, 1978, Chapel Park Corporation sold to AMGII the 41-acre tract of cemetery property and all assets of the corporation for the sum of $5,000.00. AMGII assumed all indebt-

edness of Chapel Park Corporation, including the $225,000.00 note and the $163,000.00 note.

13. On September 13, 1978, AMGII sold the 41-acre tract of cemetery property and all assets of the corporation to Omega Service Insurance Company, Inc. for $10.00 and other valuable consideration, being primarily the assumption of outstanding indebtedness. However, the $163,000.00 and $225,000.00 notes were expressly excluded from the assumption.

14. On September 14, 1978, Provident General Corporation was incorporated.

15. On September 14, 1978, Omega Service Insurance Company, Inc. sold to Provident General Corporation the 41-acre tract of land and all assets for the price of $10.00, along with the assumption of outstanding indebtedness. Provident General Corporation recognized the two notes held by AMI, Inc. but made no assumption of responsibility on those notes.

The issues for decision may be summarized in the following manner:

1) Is the mortgage executed on July 28, 1972, by Alexandria Memorial Gardens, Inc. valid in view of the language of La.R.S. 8:3, which prohibited the mortgage or hypothecation of cemetery property?

2) Is the mortgage executed on June 11, 1976, by Alexandria Memorial Gardens, Inc. valid in view of the language of La.R.S. 8:313, which prohibits the mortgage or hypothecation of cemetery property?

3) In the event the mortgages are found to be invalid, whether AMI, Inc. as holder of the promissory notes made by Alexandria Memorial Gardens, Inc., may execute against that portion of the 41-acre tract of cemetery property that is not in actual use?

## VALIDITY OF THE 1972 MORTGAGE

The trustee contends the $163,000.00 note and mortgage held by AMI, Inc. on the 41-acre tract is void as violative of the provisions of La.R.S. 8:3, which provided:

"Public cemeteries with the monuments erected thereon, are exempt from taxation and from seizure and sale for debt, and are not susceptible of mortgage, whether legal or conventional. It is unlawful for any Recorder of Mortgages to record or certify the existence of any privilege or mortgage bearing on public cemeteries or any part thereof."

Louisiana law regarding cemeteries was amended and expanded by Act No. 417 of 1974. Since the mortgage presently at issue was executed in 1972, it is necessary to examine the law as it existed then. The above-quoted statutory provision was the law as it existed in 1972 when the subject mortgage was executed.

The defendant in this adversary proceeding, AMI, Inc., contends that the $163,000.00 note and mortgage it holds on the debtor's property executed on September 28, 1972, is valid for the reason that there was no law prohibiting the mortgage of cemetery property owned by a *private* cemetery company or association in 1972. AMI, Inc. claims that La.R.S. 8:3 prohibited the mortgage of "publicly owned" cemeteries only.

A review of the historical source of La. R.S. 8:3 may shed some light on the interpretation of the prior law. The History and Source of Law comments following La.R.S. 8:3 provides:

"R.S. 1870, §§ 386, 3423, which were duplicate provisions, based on Acts 1855, No. 112, § 1, provided 'That all public cemeteries for the purpose of interment, with the monuments erected thereon, *whether owned by religious or charitable corporations or associations, by municipal corporations or by individuals,* shall be forever exempt from taxation and from seizure and sale for debt, and shall never be susceptible of mortgage, whether legal or conventional.' " (emphasis added).

The words "for the purpose of interment ... whether owned by religious or charitable corporations or associations, by municipal corporations or by individuals" were

deleted from the language of the source statute and do not appear in La.R.S. 8:3. There is no explanation for the deletion of this language as it appeared in the earlier version of the statute. Thus, it becomes necessary to define the term "public cemetery". That is, whether it means publicly *owned* or whether it means open to public *use*. The Louisiana Revised Statutes do not contain a definition of the term. Therefore, the court turns to common law sources to aid it in defining the term.

■ "The law contemplates two classes of cemeteries—public and private. A public cemetery is one used by the general community, a neighborhood, or a church, while a private cemetery is one used by a family or a small portion of the community. However, the test of whether a cemetery is public or private, is *public user,* and not who has title thereto. Thus a cemetery, though privately owned or maintained, may be deemed a public cemetery if it is open, under reasonable regulations, to the use of the public for burial of the dead. It has been said that a cemetery, though privately owned, is properly classified as a 'public cemetery' as distinguished from a private one, where it consists of a great number of small burial plots or sites, sold and for sale to the public." 14 Am.Jur.2d, Cemeteries, § 2 (1964). (Citations omitted/emphasis added).

■ We find that Alexandria Memorial Gardens is a public cemetery. Although it was owned and developed by a private corporation, it consists of many small burial plots and a mausoleum, of which spaces have been sold and are for sale to the public. It is open to public use, under reasonable regulations, and is deemed to be a public cemetery. Therefore, the 1972 mortgage securing the $163,000.00 note is declared to be invalid as being in contravention of La.R.S. 8:3.

## VALIDITY OF THE 1976 MORTGAGE

The trustee contends that the Collateral Mortgage dated June 11, 1976 securing a note in the sum of $225,000.00, executed by Alexandria Memorial Gardens, Inc. and payable to AMI, Inc. is invalid since it is prohibited by La.R.S. 8:313, which reads:

"Property dedicated for cemetery purposes, including cemetery spaces and the land on which they stand, shall be exempt from seizure and sale for debt and shall not be susceptible for mortgage or other hypothecation, whether legal or conventional, and it shall be unlawful for any clerk of court or recorder of mortgages to record or certify any mortgage or encumbrance as bearing against any such property."

The defendant makes no issue of the classification of the cemetery property (i.e. public vs. private) as regards the 1976 mortgage. As a matter of fact, the defendant acknowledges in its brief that the 1974 legislation re-enacting La.R.S. 8:3 as 8:313 is a prohibition against mortgaging *any* property dedicated for cemetery purposes. (Defendant's Br. p. 7).

Not only is the 1976 mortgage in direct violation of La.R.S. 8:313, but it was granted by a non-existent legal entity. The Collateral Mortgage Note and Collateral Mortgage in the sum of $225,000.00 were executed by Alexandria Memorial Gardens, Inc. represented by Frank H. Jones, President. The original corporation by the name of Alexandria Memorial Gardens, Inc. was merged into Chapel Park Corporation pursuant to a Joint Agreement and Plan of Merger dated August 23, 1972. The merger became legally effective November 9, 1972 when recorded with the Louisiana Secretary of State. Alexandria Memorial Gardens, Inc. was no longer qualified to transact business in the state of Louisiana from November 9, 1972, forward.

A second corporation by the name of Alexandria Memorial Gardens, Inc. (AMGII) was incorporated on July 15, 1978. Between the dates of November 9, 1972 and July 15, 1978, no corporation by the name of Alexandria Memorial Gardens, Inc. existed.

■ Therefore, the mortgage that AMI, Inc. holds as mortgagee dated July 11, 1976, is invalid on two grounds. First, it is in contravention of La.R.S. 8:313 which pro-

hibits the mortgaging of cemetery property. Secondly, the mortgagor was a non-existent legal entity on the date the mortgage was executed. A non-existent legal entity has no capacity to mortgage property as it is without capacity to contract. La.Civil Code art. 1779, 3300, 3302; La.R.S. 12:41. For these reasons, the July 11, 1976 collateral mortgage securing the collateral mortgage note in the sum of $225,000.00 is declared invalid.

### RECOURSE AGAINST CEMETERY PROPERTY NOT IN ACTUAL USE

AMI, Inc., the defendant-creditor, argues alternatively, that even if the mortgages of 1972 and 1976 are declared to be invalid, it should nevertheless be entitled to recognition of its mortgage insofar as it encumbers that portion of the 41-acre tract "which has not been used or dedicated for cemetery purposes".

This court has previously decided, in a related case, that Alexandria Memorial Gardens' 43-acre tract of land was dedicated to the public for cemetery use in 1956.[1] The 41 acres upon which the above-discussed mortgages were to attach are a portion of the 43-acre tract that was dedicated to use as cemetery property in 1956.

AMI, Inc. has not shown that the portion of the 41-acre tract not actually in use as a cemetery has been released from the "dedication to public use" which arose in 1956 when the land was dedicated as a cemetery. Louisiana jurisprudence has held that once property has been dedicated as a cemetery, followed by actual use thereof, it may not be used in a manner inconsistent with the original dedication.

The court in *Vidrine v. Vidrine*, 225 So.2d 691 (La.App. 3rd Cir.1969), set out the respective rights of the parties arising from dedication of land to cemetery use. There it said:

"This dedication is in the nature of an irrevocable covenant running with the land. It is a real right, not a servitude or usufruct, but an implied contractual relationship that binds the owner irrevocably. "The owner is bound to the following: (1) It cannot remove or disturb any grave. (2) Relatives and friends have unrestricted rights to visit and care for the graves. (3) Property included in the cemetery cannot be used by the owner for any purpose inconsistent with cemetery purposes. (4) The owner cannot reduce the size of lands set apart as a cemetery." 225 So.2d 691, 697.

■ This court is of the opinion that the entire 41 acres on which the cemetery is established has been dedicated to the public for use as a cemetery. This dedication occurred in 1956. The public has not abandoned or released the cemetery from its dedication to public use. To allow AMI, Inc. to execute against that portion of the cemetery property where human remains are not actually buried, would be an act toward reducing the size of the lands set apart as a cemetery. The result would be in direct conflict with the established law of this state. Therefore, AMI, Inc. is prohibited from executing against that portion of the cemetery property where burials have not actually occurred.

In summary, the mortgage executed in 1972 by Alexandria Memorial Gardens, Inc., is invalid as being in violation of La.R.S. 8:3. The mortgage executed in 1976 by Alexandria Memorial Gardens, Inc., is invalid as being in violation of La.R.S. 8:313. Additionally, the 1976 mortgage is invalid for the reason that it was granted by a non-existent legal entity, having no capacity to contract. Furthermore, AMI, Inc. is prohibited from executing against portions of the cemetery property not in actual use.

A judgment will be rendered in favor of the trustee, in accordance with this opinion.

---

1. In re *Provident General Corporation*, 32 B.R. 594 (Bkrtcy.W.D.La.1983).